KELSEY
*vs.*
HIS CREDITORS

————⊷⊶————

## BANKS vs. TRUDEAU.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the Court. By the public act, in which this action was commenced, it appears the plaintiff and Josias E. Kerr, husband of the appellant, entered into an agreement by which the former promised to endorse the notes of the latter, to a certain amount therein mentioned. In this act it is stipulated the plaintiff shall be kept harmless by Kerr, and for the further assurance of this engagement, the defendant, his wife, bound herself in *solido* as surety, and gave a mortgage on certain shares which were her paraphernal property.

The husband did not comply with his contract, and on the plaintiff's obtaining an order of seizure to sell the property hypothecated, the defendant applied for an injunction, which was granted her by the district court. That

2ns 39
47 777

The wife may bind herself, jointly, & jointly and severally, with her husband, provided she renounces the benefit of the law of Toro, in due form.

When this is done, the creditor need not prove that the engagement turned to her advantage.

She cannot bind herself as surety for her husband.

Nor even by binding herself *in Solido* with him.

East'nDistrict. Dec.1823.

BANKS
vs.
TRUDEAU.

tribunal after hearing the parties, dissolved it, and from that decision this appeal is taken.

The first and most important question which the cause presents, is whether the obligation entered into by the appellant is valid in law, and binding on her. The extent to which married women can render themselves liable in contracts with their husbands has been more than once a subject of examination by this court, and it has been decided:

That the wife may bind herself jointly, or jointly and severally with her husband, provided she renounces the 61st law of Toro, in the manner pointed out by the law of Spain.

That when she make that renunciation in due form, it is not necessary the person with whom she contracts should prove the engagement turned to her advantage.

And that she can in no case bind herself as the surety of the husband, *Brognier vs. Forstall 3 Martin,* 577; *Durnford vs. Gros and wife,* 7 *ibid* 489.

We have looked again into the law on which these decisions are founded, and we are satisfied of their correctness. The counsel for the appellee has taken great, and laudable pains to show, that the opinion expressed in the

case of Durnford vs. Gros and wife, respecting the inability of the wife to contract as surety of the husband, is not supported by law.    In this attempt we think he has been unsuccessful, all he has been able to do, is to shew, that the writers on the laws of Spain differ in opinion as to the extent, and effect of the restriction imposed by the 61st law of Toro in the engagements of married women; and this is not shewing enough.    When such discordance is found to exist among the commentators of our laws, as is too frequently the case, this court has always felt not only at perfect liberty, but bound in duty to judge for itself—to apply to the law, on which it is obliged to decide, the known and well established rules of construction, and granted by them to give effect to the commands of the legislator, not as others *explain* them, but as we *understand* them. To induce us therefore to change the jurisprudence which has been settled on this point, the counsel should have shown, not merely that the authors, who treat on this matter, disagree, but that the construction given by this tribunal, was unsound by the rules prescribed for the exposition of statutes, that the letter of the law was violated, or that effect was not

given to its spirit and meaning. So far however from any thing of that kind being established, there cannot be a doubt that whether the construction which the court has given to this law of Toro, be tested by the letter, or the spirit of the act, it will be found correct: in consonance with the wording of the statute, and calculated to promote and sustain the policy which originally introduced, and has since maintained this prohibition in our jurisprudence.

The words of the law are, *"De aqui adelante la muger no se pueda obligar per fiadora de su marido aunque se diga y alegue que se convirtio la tal deuda en provecho de la muger, y asimismo mandamos que quando se obligande a mancomun marido y muger en un contrato o en diversos que la muger no sea obligada a cosa alguna: Salvo si se probare, &c.* "Henceforward the wife shall not bind herself as surety for her husband, altho it should be alleged the debt was advantageous to her. And we also order, that when the husband and wife obligate themselves jointly in one contract, or severally, the wife shall not be bound unless it should be proved, &c." In the face of this prohibition as imperative, we think, as it was possible

for the legislature to enact, we are called to establish a right in the wife, which the law says she shall not possess, and this we are pressed to do, because this provision is said to have been introduced for the benefit of married women, and that they may renounce that benefit if they choose, as the appellant has done in the case before us. But if such had been the intention of the law maker, it was the most vain and unnecessary thing possible to pass this statute. The construction contended for, leaves the subject precisely as the legislature found it. For if the wife could be supposed to have prudence and discretion to know when she ought to renounce the law and become surety, She might as well be confided in, at once, to decide whether she would contract without renouncing, as the latter step must be always supposed a matter of course after a determination is taken in regard to the former. Thus the wife would be exposed to the same danger she was before the passage of the law: subject to be acted on by the authority, and sollicitations of the husband; and liable to be placed in a situation when by yielding to his wishes, and his necessities real, or imaginary, she might be stripped of all means of support for herself and family.

We cannot believe for one moment that such was the meaning and intention of those by whom this provision was enacted. We think it manifest, that as to the contract they considered the wife in a situation where her will could not be freely nor prudently exercised, and that as a matter of public policy it was therefore wise to prevent her from exercising it at all. We see no difference between the legislation on the subject and that which declares that minors are incapable of binding themselves. It was never contended they could renounce those laws which point out the mode of alienating their property. If they could, the policy of the law would be defeated, through the very weakness against which it was intended to guard. *Febro adice, par.* 1, *cap.* 7, § 14, *no.* 117 *in notis. Toulier Droit Civil, vol.* 2, *Liv.* 1, *Tit.* 5, *chap.* 6, *no.* 619.

In has been urged in the argument of this case, that the object of the law was merely to extend protection to those who wished to claim it, and that the legislative intention was fully accomplished *by the notary apprising the wife when she came forward to sign the act, that she had the privilege of not doing so if she chose. This reason appears to us quite

fanciful, and one which it is difficult to believe had any weight with the framers of the provision.

It would confine the beneficial operation of the law to those cases alone, when the wife came forward reluctantly, and had consented to become surety from a mistaken idea that she was bound in law to do so. Now we apprehend, that, not in one case in a thousand, do married women sign from such motives, and it may be doubted whether the information thus given, ever induces a single one to retract, who had previously consented to assist her husband, and carried that consent so far as to present herself before a notary prepared to put her name to the instrument that was to bind her. The considerations which induce women to form engagements of this description are widely different, and founded on feelings totally distinct, from any idea of legal obligation. Pothier tells us that the clause of renunciation to the *senatus consultum velleianum* became so much a matter of course in the acts of notaries as to render the restriction useless. *Potheir traite des obligati, no.* 388.

This brings us to the remaining question on this branch of the cause, whether the circum-

East'n District. stance of the appellant having bound herself in
Dec. 1823.

BANKS
vs.
TRUDEAU.

solido, takes her out of the protection of the law. On this head we have not had the slightest difficulty. The contract as proved in evidence shows that she was surety for the performance of an engagement entered into by her husband, and the counsel for the appellee has properly admitted this to be the fact. The terms used in the instrument by which she became so cannot alter, or effect the legal responsibility which she incured. The law cannot be cheated out of its operation by changing the form of the instrument. It is an elementary principle, that what is prohibited to be done directly, cannot be done indirectly, *es tambien regla de derecho que lo se que prohibe per un camino no se debe permitar po r otro, Feb adici, p.* 1, *chap.* 7, § 4, *no.* 114 in note. *Tonlier droit civil francais, w.* 9, *chap.* 6, § 2, *art.* 3, *no.* 147.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed; and it is further ordered, adjudged and decreed that the injunction granted by the District Court against the plaintiff proceeding to sell the slaves

named in the petition be made perpetual, and the appellee pay costs in both causes.

East'nDistrict·.
Dec. 1823.

BANKS
vs.
TRUDEAU.

*Morse* for the plaintiff, *Workman* for the defendant.